## ROBINSON *v.* LUNDRIGAN.

APPEAL FROM THE UNITED STATES CIRCUIT COURT OF
APPEALS FOR THE EIGHTH CIRCUIT.

No. 108.    Argued December 19, 20, 1912.—Decided February 3, 1913.

Where an application for public lands is finally rejected on the ground
that the soldier on whose claim the application is based had no right
thereto, the case is closed and cannot be kept open for perfection
by substituting the claim of another soldier, and the instant the
application is rejected the land becomes subject to appropriation
by another.

An application must depend upon its particular basis; it cannot be kept
open for the substitution of another right than that upon which it
was made; and if a practice to do so existed in the Department
it was wrong. *Moss* v. *Dowman*, 176 U. S. 413.

Even though the Secretary keeps the case open and afterwards rules
in favor of the subsequent entryman, the original applicant is not
divested of any rights, for no right had attached.

An application based on an invalid claim of a soldier is not an entry
valid on its face which segregates the land from the public domain
and precludes its appropriation by another until set aside. *Mc-
Michael* v. *Murphy*, 197 U. S. 304, distinguished.

THE facts, which involve the right of one filing an ap-
plication for public lands based on a soldier's claim, to keep
it open after final rejection for substitution of the claim
of another soldier, and departmental practice in regard
thereto, are stated in the opinion.

*Mr. C. D. O'Brien,* with whom *Mr. P. H. Seymour* was
on the brief, for appellants.

*Mr. Wm. E. Culkin* and *Mr. Luther C. Harris* for ap-
pellee.

Mr. Justice McKenna delivered the opinion of the court.

Bill in equity by appellants, who were complainants in the Circuit Court, and we shall so refer to them, and to the appellee as defendant, to adjudge defendant trustee for complainants of the S. W. ¼ of the S. E. ¼ of section 13, Township 55 North, Range 26 West of the Principal Meridian, and to compel a conveyance to them. The Santa Fe Railroad Company was impleaded with defendant, but it filed a disclaimer and the suit proceeded against him alone.

The rights of complainants are based upon an application for the lands as unappropriated public lands of the United States by Robinson, one of the complainants, as assignee of one James Carroll. The application was duly entered of record upon the tract and plat book in the local land office and proof of the claim of Carroll for an additional homestead entry was transmitted to the General Land Office for examination and action. Upon investigation the Land Department decided that Carroll was not entitled to make such entry and held Robinson's application for rejection and ordered a hearing to be had on June 29, 1905. Robinson did not appear and a decision was rendered holding that Carroll was not entitled to an additional homestead entry under § 2306 of the Revised Statutes. Robinson was notified of this action and that he had a right to appeal therefrom.

On the twenty-seventh of July, 1905, Robinson filed with the local land office for transmission to the General Land Office an application for leave to substitute in support of his application for entry of the land another soldier's additional homestead right in lieu of that of Carroll. In his application he said he appealed from the order cancelling Carroll's entry, and excused himself for not appearing at the hearing on June 29, 1905, on account

of the sudden and serious illness of his mother, which prevented his attendance at the hearing and also prevented him from providing a representative thereat. He disclaimed a desire to incommode the Department and expressed a willingness to aid it in the adjustment of all matters in which he should be interested. He further said that he was deeply sensible and appreciated the seriousness of defaulting at the hearing and that he did not want the case reopened. He requested a delay of thirty days and asked that the decision of the Register and Receiver of the Land Office be amended so as to grant him a reasonable time within which to perfect his entry.

An order was made allowing him thirty days after notice to file a proper substitute for the right of Carroll. On October 4, 1905, he, Robinson, filed the additional homestead right of one Justin F. Heath.

On February 15, 1906, the Commissioner of the General Land Office accepted the substitute and directed the local land office that upon the payment by Robinson of the legal fees and commissions within sixty days they should allow the entry made by him. He paid the fees as required, and thereupon final certificate No. 715, Cass Lake, Minnesota, Series, was issued to him.

On July 11, 1905, that is, prior to the filing by Robinson of the homestead right of Heath, the Santa Fe Railroad, through the defendant Lundrigan, its attorney in fact for that purpose, filed in the local land office under the act of Congress of June 4, 1897, its application to select the land. The application was received subject to final action on Robinson's application. Upon the allowance of Robinson's application and the issue to him of a final certificate the local land office rejected the application of the railroad company, from which action the latter appealed to the Commissioner of the General Land Office. The Commissioner held that the application of the railroad company constituted a valid intervening adverse right such as to

bar the substitution by Robinson of the additional home-
stead right of Heath. On February 25, 1907, the Secre-
tary of the Interior affirmed the decision of the Commis-
sioner. Upon motion for review the decision was affirmed
May 13, 1907, and, on petition for re-review, reaffirmed
July 18, 1907.

In pursuance of this decision Robinson's entry was
cancelled, and a patent for the land was issued to the
railroad company. The railroad company subsequently
conveyed the land to defendant.

The above facts are not denied. It is alleged by com-
plainants that for many years immediately preceding the
decision holding Robinson's application for cancellation
there was a rule, regulation and settled practice prevail-
ing in the Department providing that upon the rejection
of a soldier's additional homestead right, surrendered by
the assignee thereof in support of an application under
§ 2306 of the Revised Statutes, such applicant might
substitute in support thereof a valid additional homestead
right in place of that rejected.

The existence and validity of the rule is in dispute be-
tween the parties and also the legality of the decision of
the Interior Department against Robinson's application.

The Circuit Court dismissed the bill and its decree was
affirmed by the Circuit Court of Appeals by a divided
court. 178 Fed. Rep. 230.

The question in the case is very direct. Robinson's ap-
plication had no legal foundation, Carroll, upon whose
rights it was made, not being entitled to make an addi-
tional homestead entry. The question then is, could
Robinson substitute another right and give his application
precedence over the intervening claim of the railroad com-
pany? An affirmative answer is contended for by complain-
ants upon the practice of the Land Office. The defendant
denies the existence of the practice and contends, besides,
that, if it be established, it is destitute of legal effect.

We have seen that Robinson was given an opportunity to avert the rejection of his application and support it by proof of a right in Carroll. He defaulted; but he did not ask to reopen the case and establish a legal foundation for his application, but that he be given thirty days to "rescript" the land. · To this the Commissioner of the Land Office responded, affirming the decision of the local land office rejecting the application and pronouncing "the. case closed." He was, however, given thirty days to "file a proper substitute for the right" rejected, and, if he failed to do .so, the local office was directed to hold the tract "subject to entry from that time by the first qualified applicant."

On October 4, 1905, he filed as a substitute the right of Justin F. Heath, but on July 11, 1905, the railroad company had selected the lands as lieu lands. . The local land office rejected the application of the railroad company on account of conflict with Robinson's entry, subject, however, to the right of appeal. An appeal was taken and Robinson moved to dismiss it. The motion was denied on the authority of the departmental decision in the case of the *Southern Pacific Railway Co.* v. *Charles P. Maginnis, Assignee of William R. Davis,* in which it was decided, the facts being substantially the same, "that a substitution could not be allowed in the face of an intervening adverse right." The decision was affirmed by Secretary Hitchcock and successively upon review and re-review by Secretary Garfield and Acting Secretary Woodruff.

Against these rulings complainants urge previous departmental practice. This practice Robinson urged in his petition for review, and cited in support of it the case of *Germania Iron Co.* v. *James,* 89 Fed. Rep. 811. To the contention and the case the Acting Secretary replied as follows: "In that case the court held that a just and reasonable rule of administration adopted and applied by the Department, became a rule of property and could not be

altered to the prejudice of those who had initiated rights under such practice. But the rule contended for by counsel as governing the case under consideration is neither reasonable or just. Robinson attempted to initiate a right by relying upon the invalid claim of another, and insists that even though the Department would be unwarranted in recognizing such claim he should be allowed to perfect the right thus asserted to the prejudice of a valid intervening right, of which he had notice, by the substitution of another and different right. The simple statement of the facts destroys all the argument in support of such a practice. There is neither reason nor equity in it. Had Robinson been clothed with a right in himself, independent of any right claimed through his assignor, another question might be presented. But such is not the case, as he was relying solely upon the rights obtained by assignment, and of these the first was worthless and prior to the assertion of the second the right of another had attached. The arbitrary destruction of this intervening right in the manner contended for by counsel would be wholly unwarranted."

Little need be added to this reasoning. We are not disposed to review the cases by which it is contended the practice is established. It could only prevail if it were a reasonable administration of the statute. *Webster* v. *Luther*, 163 U. S. 331, 342.

Under § 2304 of the Revised Statutes every private soldier and officer who had served in the Army or Navy of the United States during the War of the Rebellion is entitled to enter under the homestead laws 160 acres of land. We omit the qualifying conditions. Section 2306 provides that every person mentioned in § 2304 who has entered under the latter section less than 160 acres "shall be permitted to enter so much land as, when added to the quantity previously entered, shall not exceed one hundred and sixty acres." This provision is the foundation of Robin-

son's rights. In *Webster* v. *Luther, supra,* these sections were considered and it was decided that the right given by § 2306 was intended as compensation and was assignable. When assigned, however, it is the right of the soldier which is transferred and which must be used to make an entry. Necessarily the right must exist before it can be exerted either by him or his assignee. Or, to put it in another way, a baseless or fraudulent claim cannot initiate or sustain a right. Hence the distinction made by Acting Secretary Woodruff between a right in Robinson and a right in his assignor and the observation that "had Robinson been clothed with a right in himself, independent of any right claimed through his assignor, another question might be presented." Hence, also, the decision of Secretary Garfield that "No right of entry is gained by the filing of an invalid application to enter, and upon the rejection thereof the rights of subsequent applicants attach in the order in which they are asserted. By admitting the rights of substitution, irrespective of the intervening rights, the mere filing of an individual soldier's additional application would in effect amount to a segregation of the land." And again, "The refusal of the Department to adopt such a practice does not prejudice the holder of a valid right. The only value of such right lies in the power of the holder to enter thereunder any land subject to it at the date of filing his application. This right is not denied in the present case, as the land there involved was subject thereto only in event there were no prior adverse claims asserted upon which entry should be allowed. The right itself is not destroyed by refusing to allow entry thereunder of this particular tract. The purchaser still has all that he bargained for, and the mere fact that his purchase may have been made upon the mistaken idea that he would be entitled as a matter of right to exercise it upon a particular tract of land does not entitle him to equitable consideration as against a prior, and therefore superior, right of another."

The ruling was right.  Each application must depend upon its particular basis.  And it cannot be kept open for the substitution of another right than that upon which it was made.  If one substitution can be permitted, successive substitutions can be permitted, and there might arise the condition of things condemned in *Moss* v. *Dowman*, 176 U. S. 413.  In that case successive formal entries under the homestead law and successive relinquishments of the entries of a tract of land were made.  Dowman, who was not a party to 'the manipulating process, about one month prior to the last relinquishment settled upon the land.  It was held that his right attached immediately upon the filing of the last relinquishment and before the last entry, though the latter was made on the same day the relinquishment was filed.  It was recognized that the entry which was given up had segregated the land and that no right could be initiated while it stood of record, but it was decided that the instant its relinquishment was filed in the local office the right of Dowman, the settler on the land, attached and the Moss entry could not defeat it.  And so in the case at bar, the instant that Robinson's application was rejected as having no legal foundation the land became subject to appropriation by another.  No right, therefore, of Robinson was divested by the ruling of the Department, as contended by complainants, for no right had attached.  His application, based on the right of Carroll, was not an entry of the land and is not within the ruling of *McMichael* v. *Murphy*, 197 U. S. 304, that an entry valid on its face segregates the lands from the public domain and precludes their appropriation by another so long as it remains undisturbed.

*Decree affirmed.*